Scott HOGENSON, Relator,

v.

BRIAN KNOX BUILDERS, and Commissioner of Economic Security, Respondents.

No. C3-83-1156.

Court of Appeals of Minnesota.

Dec. 7, 1983.

James M. Ventura, Grathwol, Oberhauser & Randall, Ltd., Wayzata, Michele G. Greer, Minneapolis, for relator.

Brian Knox Builders, pro se.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Sec.

## OPINION

LANSING, Judge.

This appeal arises from a claim for unemployment compensation made by Scott Hogenson. The commissioner of economic security denied unemployment benefits pursuant to Minn.Stat. § 268.09, subd. 1(1), after finding that Hogenson had discontinued his employment voluntarily and without good cause attributable to his employer. We remand.

Scott Hogenson began working for Brian Knox Builders (Knox) as a carpenter in May of 1979. Until March 4, 1983, Hogenson worked full time when work was available and when weather permitted. Hogenson was paid by the hour. Knox made no provisions for sick leave or vacations.

In addition to working, Hogenson also spent time motorcycle racing. On occasion he asked his employer for time off to race and for time off to recuperate from injuries received while racing. Permission was given. Hogenson was not paid for this time off. During the spring of 1982, Hogenson took off seven days to race on the national circuit. During a weekend race in June, 1982, Hogenson broke his collarbone and was not available for work from June 6 to July 26, 1982. Knox claims that after Hogenson returned from this injury, he told Hogenson that he would have to quit racing in order to retain his job. Hogenson did state that he intended to quit racing, and he sold his bike. Hogenson did not race in the fall.

On November 22, 1982, Hogenson had surgery for a work-related hernia and was away from work for approximately three months. Hogenson was covered by workers' compensation during this time. Knox hired a temporary employee to fill its three-person crew during Hogenson's absence. The temporary employee was working with the crew the week that Hogenson returned to work. Because of his recent surgery, Hogenson returned to work in a limited capacity.

Shortly before or during his first week back at work, Hogenson indicated to Knox that he intended to resume racing. He asked for two weeks off to race in March and for four additional days during March, April and May. After the request for time off was made, Knox told Hogenson that Hogenson could work full time, but if Hogenson wanted to take time off to race, Knox would no longer "promise" full-time employment for Hogenson. Hogenson agreed that he was no longer guaranteed full-time work and that racing was the reason for the reduction in hours. Hogenson agreed to stay part-time as needed. Knox did not schedule Hogenson to work during what would have been his second week back at work. Hogenson then applied for unemployment compensation. The claims deputy at the unemployment office sent a request for information to Knox on March 14, 1983. When Knox learned that Hogenson had applied for unemployment compensation, Knox called Hogenson and told him he was dismissed.

■ Based on the evidence, the commissioner made findings of fact. Since the findings have the requisite evidentiary support, the findings should not be disturbed. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 209 N.W.2d 397 (1973). The commissioner found, among other things, that:

> (4) The claimant had the election of working full time. He was the senior carpenter. The employer wanted the claimant to declare that he would be a full-time worker. The claimant's replacement would be terminated or placed in an on-call status. The claimant elected part-time, unscheduled hours.

■ Based on the above finding, the commissioner concluded that Hogenson voluntarily and without good cause attributable to the employer discontinued his employment with Knox. This conclusion does not have reasonable support in the findings because it fails to properly distinguish between the voluntary reduction to part-time, unscheduled hours and the ultimate discharge from employment. While it is essentially undisputed that Hogenson voluntarily accepted the reduction to part-time, unscheduled hours, it is also undisputed that he was not terminated until several weeks later when Knox learned that he had applied for unemployment compensation. The discharge was not from the full-time job. It was from the part-time job. The commissioner's conclusion is not binding on the court if it does not have reasonable support in the findings. *Zepp v. Arthur Treacher Fish and Chips, Inc.,* 272 N.W.2d 262, 263 (Minn.1978). Where the requisite support is not found, the case must be remanded to the commissioner for additional findings and the conclusions that result once the findings are made. *Mickelson v. Bennett,* 311 Minn. 557, 249 N.W.2d 719 (1977). Additional evidence may also be taken if the commissioner determines that it is necessary.

Because the commissioner determined that this was a voluntary termination, consideration was not given to other potential reasons for disqualification under Minn. Stat. § 268.08 or § 268.09. Under 268.08, subd. 1(3), an individual is allowed to receive benefits only if available for work. In considering the question of availability, the court held in *Thompson v. Schraiber,* 253 Minn. 46, 90 N.W.2d 915 (1958) that an employee who limited her hours to daytime hours and refused to work a split shift for personal reasons was not available for work within the meaning of Minn.Stat. § 268.08, subd. 1(3) and was therefore not entitled to any unemployment benefits. The court reasoned that split shifts were customary in plaintiff's line of work and refusal to work

a split shift for personal reasons removed her from genuine attachment to the work force.

■ Under Minn.Stat. § 268.09, subd. 2, an individual is disqualified from receiving benefits if that individual fails to accept suitable reemployment offered by a base period employer. Knox has continued its offer of full-time employment up to and through the day of the hearing before the appeals tribunal. The question of whether this is a suitable offer is a factual determination for the commissioner.

■ Under Minn.Stat. § 268.09, subd. 1(2), an individual is disqualified from receiving benefits if he is discharged for misconduct. Hogenson's action of filing for unemployment compensation cannot support a conclusion of misconduct. An application for unemployment benefits standing alone cannot be held to be misconduct under Minn.Stat. § 268.09, subd. 1(2).

If the commissioner finds no disqualification or ineligibility, Hogenson is entitled to whatever benefits would be accorded a part-time employee with unscheduled hours, because that is the position he held at the time of the discharge.

Remand for proceedings consistent with this opinion.