**James J. PORRAZZO, Relator,**

v.

**NABISCO, INC., Commissioner of Economic Security, Respondents.**

**No. CO–84–1559.**

Court of Appeals of Minnesota.

Jan. 15, 1985.

F. Clayton Tyler, Minneapolis, for James J. Porrazzo.

Nabisco, Inc., Grocery Product Div., pro se.

Regina M. Chu, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Heard, considered, and decided by POPO-VICH, C.J., and WOZNIAK and HUSPE-NI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal from the Commissioner of Economic Security's decision that relator voluntarily left his employment without good cause attributable to the employer. We reverse.

## FACTS

Relator James J. Porrazzo was employed by respondent Nabisco, Inc. until he submitted his resignation on April 9, 1984. Porrazzo concedes that he voluntarily resigned, but asserts that his resignation was with good cause attributable to the employer. The Commissioner of Economic Security determined that the termination was without good cause.

On April 1, 1983, Porrazzo was promoted to the position of materials foreman, assuming the responsibility of the receiving department in addition to his existing responsibilities in the shipping department. No supervisor was appointed for the second shift and Porrazzo was held responsible for both shifts.

As a result of his increased responsibilities, Porrazzo's work hours increased substantially to an average of 55 hours per week. The employer paid overtime compensation only for those full four hour increments worked in excess of the normal eight hour day. Because of the employer's policy on overtime compensation, Porrazzo was not paid for all the overtime he was now required to work. Testimony before the Department of Economic Security referee established that Porrazzo was subject to criticism and harassment from his immediate supervisor and that his requests for vacation time were denied.

In March 1984, Porrazzo met with two representatives of the personnel department to discuss his relationship with his supervisor. Porrazzo was told that he was expected to work out his problems directly with his supervisor.

The pressures of his increased workload, in addition to the relationship with his supervisor, affected Porrazzo's physical and mental health. He suffered from headaches, experienced difficulty breathing, and became generally irritable. In April of 1984, he was examined twice by a physician and a company nurse and found to have a stress reaction and an irregular heartbeat.

On April 9, 1984, Porrazzo submitted his resignation to his employer. On April 11, Porrazzo met with the plant manager about returning to work. The next day, he was informed that he could not return.

## ISSUE

Did relator terminate his employment without good cause attributable to the employer, thereby becoming disqualified from receiving unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(1) (Supp.1983)?

## ANALYSIS

■ Because Porrazzo voluntarily left his employment, he must establish that he did so with good cause attributable to his employer. Minn.Stat. § 268.09, subd. 1(1); *Marz v. Department of Employment Services*, 256 N.W.2d 287 (Minn.1977).

Porrazzo claims that, because his work hours and responsibilities increased without any increase in salary and because of his stressful relationship with his employer, he resigned with good cause attributable to his employer. We agree that the combined work pressures resulted in "unreasonable demands of employee that no one person could be expected to meet." *Zepp v. Arthur Treacher Fish & Chips*, 272 N.W.2d 262, 263 (Minn.1978).

In *Zepp*, the Minnesota Supreme Court determined that doubling an employee's duties and his work hours was good cause to quit. In this case, although the work hours were not doubled, they were substantially increased. Further, Porrazzo was assigned responsibility for operations not

only on the shift he regularly worked, but for an additional full shift each day. Finally, Porrazzo had an unworkable relationship with his immediate supervisor that the employer did nothing to resolve. As in *Zepp*, the employee attempted to complete his job in increasingly difficult circumstances.

Nabisco argues that Porrazzo had a duty to further inform the employer of his continuing problems and, because he did not do so, should be disqualified from receiving unemployment compensation benefits.

In *Larson v. Department of Economic Security*, 281 N.W.2d 667 (Minn.1979), the Minnesota Supreme Court denied unemployment compensation benefits stating:

> [O]nce [claimant] was provided with the expectation of assistance from his employer in eliminating his [problem], the burden was upon him to fully apprise the employer of the continuing [problem]. Without this full knowledge, it was reasonable for the employer to assume that the problem had been corrected.

*Id.* at 669.

Porrazzo admits that he did not seek assistance from his employer immediately before quitting. However, he was given no assurance and had no expectation of assistance from the employer. Earlier discussions with representatives of the employer resulted merely in the statement that Porrazzo was expected to work the matters out with his direct supervisor even though the supervisor was the source of many of his difficulties. Further, Porrazzo did attempt to resolve his problems through his supervisor as directed. The employer, through that supervisor, must be deemed to have had knowledge of Porrazzo's continuing problems.

We recognize that the court's scope of review in economic security cases is narrow. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). The findings of fact drawn by the Commissioner of Economic Security are supported by the record and are not disturbed on appeal. *Id.* However, we believe the Commissioner's conclusion of law that Porrazzo quit without good cause attributable to the employer does not have reasonable support in the findings. Therefore, it is not binding on this court. *Zepp; Johnson v. Wilson and Co.,* 266 Minn. 500, 509, 124 N.W.2d 496, 502 (1963).

## DECISION

We hold that the findings do not support the conclusion that relator voluntarily terminated his employment without good cause attributable to the employer, but instead support the contrary conclusion. Because relator terminated his employment with good cause attributable to the employer, he is not disqualified from the receipt of unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(1).

Reversed.