**TRU–STONE CORPORATION, Relator,**

v.

**William GUTZKOW, Department of Jobs and Training, Respondents.**

No. C8–86–1507.

Court of Appeals of Minnesota.

Feb. 24, 1987.

Thomas A. Janson, St. Cloud, for Tru-Stone Corp.

Steven C. McChristian, St. Cloud Area Legal Services, St. Cloud, for William Gutzkow.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Department of Jobs and Training.

Heard, considered and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

Relator Tru-Stone Corporation appeals from a determination that William Gutzkow had good cause to quit his job due to harassment. We affirm.

## FACTS

William Gutzkow was employed by Tru-Stone as a laborer from August 2, 1982 to March 21, 1986, when he voluntarily quit his job.

Some time prior to Gutzkow's resignation, his fellow employees began taunting and harassing him, calling him names and drawing uncomplimentary pictures of him with names and profanities written underneath.

In late February, Gutzkow got into a fight with a co-worker who had pretended to spit into Gutzkow's coffee cup. Since Gutzkow had been in a fight once before and was aware of Tru-Stone's rule against fighting, he went to Tru-Stone's president and explained why the fight had occurred. The president did not discipline Gutzkow, but asked his plant manager to investigate the harassment. The plant manager transferred Gutzkow to another section for one day, and then told Gutzkow and the co-worker that they would have to start getting along.

The employees continued to harass Gutzkow. On one occasion, Gutzkow's section leader made derogatory remarks to him about his wife, and told him that he would either get him fired or make him quit. On March 21, 1986, Gutzkow again complained to the president, who promised to look into the matter. However, on the following Monday Gutzkow resigned.

Gutzkow applied for unemployment compensation. A claims deputy denied him benefits, determining that he did not have good cause to quit. Gutzkow appealed to a Department referee, who affirmed the claims deputy's decision, reasoning that Gutzkow "simply did not give the employer a reasonable amount of time to remedy the situation." Gutzkow appealed again, this time to a Commissioner's representative, who reversed the referee's decision, finding:

> The evidence demonstrates that the employer knew for several weeks that the claimant was being harassed substantially, but took no decisive steps to end these acts. Indeed, the claimant's immediate superior joined in on the threats, intimidation and humiliation of the claimant. The claimant had no reason to expect that the president of the employer would in fact exert sufficient control to give him real relief.

## ISSUE

Does the record support the Commissioner's determination that Gutzkow had good cause to quit his job with Tru-Stone?

## ANALYSIS

▮▮▮▮ An individual who voluntarily quits his job is disqualified from receiving unemployment compensation benefits unless he can prove that his resignation was for "good cause attributable to the employer." Minn.Stat. § 268.09, subd. 1(1) (1984); *Zepp v. Arthur Treacher Fish & Chips,* 272 N.W.2d 262, 263 (Minn.1978). "Good cause" may be established if the employee has been subjected to harassment on the job and can demonstrate that he gave his employer notice of the harassment and an opportunity to correct the problem. *See Larson v. Department of Economic Security,* 281 N.W.2d 667 (Minn.1979); *Burtman v. Dealers Discount Supply,* 347 N.W.2d 292, 294 (Minn.Ct.App.1984). Then, if the employee is "provided with the expectation of assistance from his employer" in eliminating the harassment, the employee must continue to apprise the employer of additional harassment. *Larson,* 281 N.W.2d at 669.

▮▮▮▮ Here, the Commissioner's representative found that Gutzkow had received no real expectation of assistance from Tru-Stone. The Commissioner's findings must be upheld if there is any evidence in the record which reasonably tends to sustain them. *Chellson v. State Div. of Employment and Security,* 214 Minn. 332, 336, 8 N.W.2d 42, 45 (1943).

There is evidence in the record that Gutzkow's superiors did not provide him with a reasonable expectation of assistance. Gutzkow himself testified:

> [T]hen [the plant manager] got both me and Dan [the co-worker] together and he told us * * * that he couldn't put up with this child-like stuff, he's not a babysitter, and then he said that he's going to have the two of us working together every day for the next six months till we can learn to get along.

Tru-Stone's president testified that he assured Gutzkow he would look into the problem and then delegated everything to the plant manager. The plant manager testified:

> I tried to get [Gutzkow] and [the co-worker] to work along, you know. You've got to work together in a shop.

This was the plant manager's sole testimony regarding his response to the harassment. We concur with the Commissioner's finding that, in view of the plant manager's failure to respond, Gutzkow was not actually provided with a "reasonable expectation of assistance."

The record also indicates that Gutzkow's section leader participated in the harassment. Gutzkow testified without contradiction that the section leader was similar to a foreman, i.e., a direct supervisor. According to Gutzkow, some time after he had complained to the president, the section leader called him names such as "slime," "scum" and "son-of-a-bitch," called his wife a slut, and told him that he was "never going to be off the shit list

around here", that nobody liked him, and that he would make Gutzkow quit or get him fired.

The supreme court has stated that a manager's knowledge should be imputed to an employer where the manager "performs basically a 'first level supervisory and managerial function.'" *McNabb v. Cub Foods,* 352 N.W.2d 378, 383 (Minn.1984). In *Dura Supreme v. Kienholz,* 381 N.W.2d 92 (Minn.Ct.App.1986), this court declined to hold that the employer had offered reasonable assurances of assistance where the employee's supervisor told the employee to take the harassment as a joke. Similarly, in *Porrazzo v. Nabisco Inc.,* 360 N.W.2d 662 (Minn.Ct.App.1985), we held that an employer was deemed to have had knowledge of continuing harassment where the supervisor was the source of many of the employee's problems.

Thus, here, the harassment by Gutzkow's section leader must be imputed to Tru-Stone. This harassment, in combination with the plant manager's failure to respond to the situation, negated the president's assurances of assistance. Since Gutzkow therefore received no real expectation of assistance, he had no duty to keep Tru-Stone apprised of the continuing harassment. Continued notification is necessary only after the employee has received an expectation of assistance. *See Larson,* 281 N.W.2d at 669; *Porrazzo,* 360 N.W.2d at 664.

Tru-Stone argues that because Gutzkow somehow "incited" the harassment, he did not have good cause to quit. We do not consider this issue, since there was no evidence that it was ever presented to the Commissioner's representative for review. *See Ruzynski v. Cub Foods, Inc.,* 378 N.W.2d 660, 663 (Minn.Ct.App.1985). However, we do note that neither the Commissioner's representative nor the referee found that Gutzkow incited the harassment. To the contrary, the Commissioner's representative found that Gutzkow's fighting was in response to the harassment.

## DECISION

The record supports the Commissioner's determination that Gutzkow had good cause to quit his job due to harassment.

Affirmed.