Robert W. BIEGNER, Relator,

v.

BLOOMINGTON CHRYSLER/PLYM-OUTH, INC., Commissioner of Jobs and Training, Respondents.

No. C5-88-416.

Court of Appeals of Minnesota.

July 19, 1988.

J. Thomas Church, Minneapolis, for Robert W. Biegner.

Marianne D. Short, Peggy Kubicz Hall, Minneapolis, for Bloomington Chrysler/Plymouth, Inc.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by
LANSING, P.J., and RANDALL and
KALITOWSKI, JJ., without oral
argument.

## OPINION

KALITOWSKI, Judge.

Robert Biegner's claim for unemployment compensation benefits was denied by a Commissioner's representative with the Department of Jobs and Training, who determined that Biegner did not have good cause to quit his job with respondent Bloomington Chrysler–Plymouth, Inc. We affirm.

## FACTS

Relator Robert Biegner began working as a used car lot man for the respondent automobile dealership in February 1986. In July 1986, respondent's used car salesmen and used car manager began making jokes about Biegner's sex life. Biegner complained to his union in October or November 1986, and the manager stopped

making the comments and told the salesmen to leave Biegner alone. Some of the salesmen, however, continued to make jokes about Biegner's sex life until approximately February 1987.

In October 1986, one of the used car salesmen called Biegner at home one evening, identified himself as a highway patrol officer, and informed Biegner that one of respondent's salesmen had been killed in an automobile accident. When Biegner became upset, the salesman identified himself and told Biegner it was a joke. The next day the salesman apologized.

In March 1987, one of the used car salesmen displayed pictures of the used car staff, including Biegner, with captions attached as a joke.

In mid-April 1987, some of the used car salesmen made a dummy, using Biegner's work clothes and a balloon, and hung the dummy from a rope in the used car body shop. When the used car manager was informed of the incident, he spoke with Biegner and one of the used car salesmen responsible for the incident. Biegner testified:

> And [the used car manager] told Shelly that everythings gotta stop, that's it. He told us if it continued that one of the two of us would have to go, he would not fire anybody, he would request one of us to resign. And he let Shelly leave the room and he spent about an hour explaining to me that the salesmen were basically immature and you know that they're naturally, they're practical jokers and you have to learn to accept this you know, and he explained that they were a little jealous that I was making such good money as a lot man * * *.

At the end of February or the beginning of March 1987, Biegner had stomach problems, diagnosed as dyspepsia. By April 24, however, the symptoms had disappeared.

On April 30, 1987, respondent's new car manager issued Biegner a written warning for failing to wash cars, and on May 5, 1987, Biegner quit his job, citing harassment, lack of cooperation, and poor working conditions as reasons for his resignation.

Biegner applied for unemployment compensation benefits, which were denied following a determination by a Commissioner's representative that Biegner had not established good cause to quit.

## ISSUES

1. Did Biegner quit his job as a consequence of sexual harassment?

2. Did Biegner have good cause to quit as a result of general harassment by his coworkers?

3. Did Biegner quit his job as a result of a serious illness?

## ANALYSIS

■ An employee who voluntarily and "without good cause attributable to the employer" discontinues his employment is disqualified from receiving unemployment benefits. Minn.Stat. § 268.09, subd. 1(1) (1986). The employee has the burden of proving that he discontinued his employment for good cause attributable to the employer. *Zepp v. Arthur Treacher Fish & Chips Inc.*, 272 N.W.2d 262 (Minn.1978).

■ On appeal, we will not disturb the Commissioner's findings if there is evidence reasonably tending to sustain them, viewing the evidence in the light most favorable to the findings. *White v. Metropolitan Medical Center*, 332 N.W.2d 25 (Minn.1983). The ultimate question whether the employee had good cause to quit, however, is one of law which may be independently determined on appeal. *Forsberg v. Depth of Field/Fabrics*, 347 N.W.2d 284 (Minn.Ct.App.1984). The employer need not be negligent or at fault; the employee must simply establish that the good cause is "attributable to the employer." *Neubert v. St. Mary's Hospital & Nursing Center*, 365 N.W.2d 780 (Minn.Ct.App.1985). "Good cause attributable to the employer" is defined as a reason for quitting which is "compelling, real and not imaginary, substantial and not trifling, reasonable and not whimsical and capricious." *Ferguson v. Dept. of Employment Services*, 311 Minn. 34, 44, 247 N.W.2d 895, 900 (1976).

1. Minn.Stat. § 268.09, subd. 1(1) (1986) states:

A separation shall be for good cause attributable to the employer if it occurs as a consequence of sexual harassment.
* * *

■ Biegner claims the salesmen's remarks concerning his sex life constituted sexual harassment. The Commissioner, however, found that the remarks had ceased approximately three months before Biegner discontinued his employment; therefore, Biegner's separation was not a consequence of the alleged sexual harassment, as required by the above statute.

In light of our decision, we need not address the question whether cases decided under Minnesota's Human Rights Act, Minn.Stat. § 363.01–.14 (1986), should be relied upon when deciding unemployment compensation claims.[1] (*See, e.g., Klink v. Ramsey County*, 397 N.W.2d 894 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987), cited by the Commissioner's representative.).

2. We also reject Biegner's claim that he had good cause to quit based upon general harassment by the salesmen.

■ An employee subjected to harassment has the burden of demonstrating that he gave his employer notice of the harassment, but the employer failed to take timely and appropriate action. *See* Minn.Stat. § 268.09, subd. 1(a); *Tru–Stone Corp. v. Gutzkow*, 400 N.W.2d 836, 838 (Minn.Ct. App.1987).

■ If the employer, upon becoming aware of the problem, provides the employee with a reasonable expectation of assistance, the burden remains upon the employee to apprise his employer of any continuing harassment; otherwise, it is reasonable for the employer to assume the problem has been corrected. *Larson v. Dep't. of Economic Security*, 281 N.W.2d 667, 669 (Minn.1979).

■ Here, when Biegner complained about the remarks about his sex life, the

used car manager stopped making the remarks and told the salesmen to stop. When Biegner told the manager about the incident regarding the pictures/captions, the salesmen were told to cooperate and not give Biegner a hard time. Regarding the salesman's telephone call to Biegner at his home, the Commissioner found it "a matter between persons who at the time considered themselves somewhat friends."

■ Biegner testified that when he complained about the dummy incident, the used car manager told the *salesman* "everything's gotta stop" or one of them would have to go. The evidence as a whole convinces us that, under the circumstances, the used car manager's actions in response to the problems were timely and appropriate, and provided Biegner with a reasonable expectation of assistance. Consequently, we agree with the Commissioner that Biegner did not establish good cause to quit.

3. Minn.Stat. § 268.09, subd. 1(2)(b) states:

An individual shall not be disqualified [from receiving unemployment compensation benefits] under any of the following conditions:

(b) The individual is separated from employment due to personal, serious illness provided that such individual has made reasonable efforts to retain employment;
* * *

The evidence indicates that Biegner's dyspepsia had ceased approximately two weeks prior to his separation from employment; therefore, the Commissioner properly found his separation was not due to a serious illness.

## DECISION

Affirmed.

LANSING, J., dissents.

LANSING, Judge, dissenting.

"Good cause attributable to the employer" may be established if the employee has been subjected to harassment on the job

---

1. For example, there is no allegation that Biegner was a member of a protected class, as required in human rights cases. *Klink*, 397 N.W. 2d at 901.

and can demonstrate that he gave his employer notice of the harassment and an opportunity to correct the problem. *Larson v. Department of Economic Security,* 281 N.W.2d 667, 669 (Minn.1979); *Tru-Stone Corporation v. Gutzkow,* 400 N.W.2d 836, 838 (Minn.Ct.App.1987); *Porrazzo v. Nabisco, Inc.,* 360 N.W.2d 662, 664 (Minn.Ct.App.1985). The employee need not continue to notify the employer of additional harassment unless the employer has provided a reasonable expectation of assistance in eliminating the problem. *See Larson,* 281 N.W.2d at 669; *Porrazzo,* 360 N.W.2d at 664.

Biegner was the subject of repeated harassment in the form of remarks about his sex life which continued until he complained to a union steward, who brought the harassment to the attention of the used car manager. Thereafter, although the manager stopped his own participation in the sexual remarks, practical jokes by the other salesmen continued. In mid-April 1987, a salesman made a dummy using Biegner's work clothes and hung it in effigy in the body shop. When Biegner complained, his employer spoke with both Biegner and the salesman and cautioned them that they would have to get along with each other or one or both would be fired.

All three participants in the meeting following the incident with the dummy testified that the manager cautioned both Biegner and the salesman suspected of instigating the incident that they would have to get along with each other or one of them would be fired. Nothing in the record supports the commissioner's conclusions that the employer intended to direct the threat of discharge only to the salesman, and that Biegner could not have believed that his job was in jeopardy. The manager's remarks placed at least some of the responsibility for the harassment on Biegner himself, failed to provide Biegner with any reasonable expectation of assistance, and tended to discourage him from requesting additional protection.

The commissioner also emphasized that the manager spoke privately with Biegner for about an hour following the meeting with the salesman, noting that "[t]his is not demonstrative of an employer who believes the claimant is at fault." The record indicates, however, that much of that hour was spent in an attempt to convince Biegner that he must "learn to accept" the salesmen's practical jokes and get along with them. This response to the harassment would not have produced a reasonable expectation of assistance. *Cf. Tru-Stone,* 400 N.W.2d at 838 (employer's solution to harassment complaint was threat to make employees work together until they "can learn to get along").

Because the employer's response to Biegner's harassment complaint chilled his right to ask the employer for further protection, and failed to provide him with a reasonable expectation of assistance, Biegner should not be disqualified from receiving unemployment benefits.