Janice POLLEY, Relator,

v.

**GOPHER BEARING COMPANY,**
Commissioner of Jobs and
Training, Respondents.

No. C8–91–971.

Court of Appeals of Minnesota.

Dec. 17, 1991.

Review Denied Jan. 30, 1992.

Charles L. Friedman, Minneapolis, for Polley.

Lisa G. Perszyk, Moore, Costello & Hart, St. Paul, for Gopher Bearing Co.

Hubert H. Humphrey, III, Atty. Gen., Nancy J. Joyer, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by NORTON, P.J., and SHORT and AMUNDSON, JJ.

## OPINION

NORTON, Judge.

Relator Janice Polley obtained a writ of certiorari, seeking review of the respondent Commissioner's denial of her claim for unemployment compensation benefits. Polley claims the Commissioner erred by determining that she did not have good cause to quit her job with respondent Gopher Bearing Company. We agree and reverse.

## FACTS

Polley began working for respondent Gopher Bearing Company (Gopher) in 1983 as an accounts payable clerk. In 1987, Gopher promoted Polley to a billing clerk position.

Polley took a maternity leave while she was an accounts payable clerk, and another maternity leave while she was a billing clerk. On both of those occasions, when Polley returned to Gopher, she resumed her prior job responsibilities.

Polley began her third maternity leave on March 14, 1990. Prior to her maternity leave, Polley mentioned to Gopher's general manager, Fraser, that if her husband accepted a new job, the "ideal situation" would be for her to stay at home with her family. However, both parties at all times understood that Polley's absence was only a maternity leave. Polley never actually gave notice that she would not be returning to work for Gopher.

When she returned to work on May 1, 1990, she discovered that Gopher had employed someone else to take over her billing clerk position. Polley was given other responsibilities, and in July 1990, she was given a job as Gopher's receptionist. She received a raise at that time.

Shortly thereafter, the office manager reduced Polley's hours from 40 hours per week to seven hours per day, or 35 hours per week. Polley complained to Fraser about the reduction in her hours. Polley also requested a transfer to another position. Fraser agreed that the part-time work would be a problem for her income needs. He guaranteed Polley 35 hours per week and more if other work became available. Despite this promise, however, Polley's hours were again reduced another half-hour per day; thus reducing her hours to 32.5 per week.

On August 14, 1990, Polley gave notice that she was resigning from Gopher so she could stay home with her baby. Polley testified that because her hours had been cut twice, she did not believe any further complaints would be successful. She also believed that if she gave the true reason for her resignation, Gopher might have anticipated a lawsuit and delayed or withheld distributing her profit sharing monies.

Polley filed a claim for unemployment compensation benefits with the Department of Jobs and Training, stating: "I was demoted and my hours were cut * * *. I asked to change jobs in the company, talked to [my] supervisor and told him numerous times I needed full time work." Fraser responded in a letter to the Department, admitting that Polley's hours and responsibilities had been reduced.

Polley's claim for unemployment benefits was denied. She appealed to a Department referee, who conducted a hearing. The referee received evidence and testimony by Polley and Fraser.

Polley testified that her duties as an accounts payable clerk included paying

vendors and making sure everything was sold over cost at a decent profit. Polley was also responsible for other miscellaneous office duties.

Polley characterized her billing clerk duties as "a lot more responsible" than her duties as accounts payable clerk. In addition to many of her prior responsibilities, she billed customers and did expediting. Polley had an associate degree in computer programming and accounting.

Polley considered the receptionist position a "demotion." She did not have "anywhere near the responsibilities that [she] had before." Fraser admitted: "[T]here was a change in responsibility to be sure." Polley described her receptionist duties as answering the telephone, taking messages, and working "will call" when necessary.

Following the hearing, the referee issued findings of fact and a decision affirming the initial denial of unemployment benefits. The referee found that Polley's hours were reduced by one hour per day on July 9, 1990, and an additional half-hour per day on July 11, 1990. Nevertheless, the referee also found that Polley was guaranteed 35 hours of work per week, and that her hours were only reduced by six percent, since she had only averaged 37.5 hours per week in calendar year 1989. In a memorandum attached to his findings, the referee found that, as receptionist, Polley's hours and pay remained the same, and her duties were comparable to her duties as billing clerk.

The referee concluded that Polley had failed to complain prior to resigning, and that the reduction in hours did not provide her with good cause to quit.

Polley appealed the referee's decision to a Commissioner's representative, who affirmed the referee's findings of fact and decision. In a memorandum, the Commissioner's representative explained:

> [W]e are persuaded that the receptionist position was a suitable position when compared with the claimant's previous clerical position as a billing clerk. Further, the approximate 12% reduction of the claimant's work hours was an amount legally insufficient to justify the claimant's decision to terminate the employment relationship. And, prior to severing her employment, the claimant did not meaningfully communicate to the employer her dissatisfaction with the reduction in her work hours.

Polley has obtained a writ of certiorari, seeking review of the Commissioner's representative's decision.

## ISSUE

Did Polley have good cause to resign when her job responsibilities were changed and her hours were reduced upon her return from maternity leave?

## ANALYSIS

An individual who voluntarily quits a job without good cause attributable to the employer is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(a) (1990). The employee who voluntarily quits has the burden of proving she had good cause to do so. *Marz v. Department of Employment Serv.*, 256 N.W.2d 287, 290 (Minn.1977). Whether an employee had good cause to quit is a conclusion of law. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). "[A]n appellate court is not bound by the Commissioner's conclusions of law but is free to exercise its independent judgment." *Geo. A. Hormel & Co. v. Asper*, 428 N.W.2d 47, 50 (Minn.1988) (citations omitted).

Polley argues that she had good cause to quit her job because Gopher violated Minnesota's Parenting Leave Act, Minn. Stat. §§ 181.940–.944 (1990). The Commissioner's representative failed to address the Parenting Leave Act. Instead, the Commissioner's representative concluded that appellant did not have good cause to quit because the receptionist job was suitable employment and appellant did not communicate her dissatisfaction with her reduced hours to Gopher.

The Parenting Leave Act requires that

an employer[1] "must" grant an unpaid leave of absence to a parent "in conjunction with the birth or adoption of a child." Minn.Stat. § 181.941, subd. 1 (1990). The Act requires that an employee be allowed to return to a former position or "a position of comparable duties, number of hours, and pay." Minn.Stat. § 181.942, subd. 1(a) (1990).

The undisputed evidence indicates that Polley's receptionist duties were not comparable to her billing clerk duties. Polley testified that her new job was a "demotion." Fraser admitted that there was a "reduction" in her responsibilities. The record contains no evidence suggesting that the two positions were comparable.

Nor were Polley's reduced hours comparable to those she had worked previously. The parties agree and the Commissioner's representative found that Polley's hours were reduced a total of one and one-half hours a day, from eight to six and one-half. In other words, her hours were reduced from 40 to 32.5 per week, or 18.75%.[2] Such a significant reduction requires a conclusion that Polley's new hours were not comparable to her former hours. *See Sunstar Foods, Inc. v. Uhlendorf,* 310 N.W.2d 80, 84 (Minn.1981) (suggesting that a decrease in wages of less than 15% may not provide good cause to quit, whereas a decrease of more than 20% is sufficient).

We note that when Polley returned to work on May 1, 1990, she continued to receive the same hourly wage she had received before her maternity leave. In fact, in July 1990, she received a raise of 35 cents per hour. However, when the reduction in her hours is taken into account, it is apparent that her earnings were reduced.

Although the Commissioner's representative did not consider whether Polley's duties as billing clerk and receptionist were "comparable" within the meaning of the Parenting Leave Act, the Commissioner's representative found the receptionist position was a "suitable" position when compared to Polley's previous billing clerk position. We recognize that at least in some contexts it is a factual question whether proffered employment is "suitable." *See, e.g., Hogenson v. Brian Knox Builders,* 340 N.W.2d 360, 363 (Minn.App.1983) (construing Minn.Stat. § 268.09, subd. 2—failure to accept suitable reemployment *after* becoming unemployed). For purposes of Minn.Stat. § 268.09, subd. 2 (1990), "suitable reemployment" is defined as "substantially the same or better hourly wages and conditions of work as were previously provided." If this definition were utilized,[3] the Commissioner's finding that the receptionist position was suitable would find no support in the record. There was no evidence by either Polley or Fraser that the receptionist position offered "substantially the same or better hourly wages and conditions" as the billing clerk position. We need not defer to the Commissioner's factual findings if there is no evidence in the record reasonably tending to sustain those findings. *See White v. Metropolitan*

1. The undisputed testimony indicates that Gopher employed 25 individuals. Accordingly, Gopher was an "employer" for purposes of the Act. Minn.Stat. § 181.940, subd. 3 (1990) (" 'Employer' means a person or entity that employs 21 or more employees at at least one site.").

2. The Commissioner's representative concluded that Polley's hours were reduced by only 12%, although it is not clear how she arrived at that figure. If the Commissioner's representative used the promised hours of 35, a reduction from 40 hours to 35 hours is 12%. However, the 35 hour figure would be erroneous because Polley was actually working only 6.5 hours/day or 32.5 hours/week. Alternatively, if the Commissioner's representative adopted the referee's finding that in the months before Polley went on her maternity leave, she had *actually* aver-

aged only 37.3, instead of 40, hours per week (presumably due to her use of vacation and sick time), the reduction from 37.3 to 32.5 is only a 13% reduction in hours. This calculation would also be erroneous because if the Commissioner's representative wished to deduct Polley's vacation and sick time from the 40 hours per week she was paid for, then a comparable figure should have been deducted from the 32.5 hours Polley was subsequently paid for.

3. We do not mean to suggest that the Commissioner was correct in considering whether the receptionist position was "suitable." Since Polley was not unemployed when she was offered the receptionist position, the provisions of Minn.Stat. § 268.09, subd. 2 would not appear applicable.

*Medical Center*, 332 N.W.2d 25, 26 (Minn. 1983).

■ Prior caselaw does indicate that a material alteration of conditions of employment may provide an employee with good cause to quit. In *Marty v. Digital Equipment Corp.*, 345 N.W.2d 773 (Minn.1984), a personnel assistant resigned upon being informed that she was being reassigned to a clerical/stenographic position. The supreme court reversed the Commissioner's conclusion that the employee did not have good cause to resign, concluding that the new position was not substantially equivalent to the prior position. The court stated:

We have recognized that a claimant has a right to reject, without loss of benefits, a job which requires substantially less skill than she possesses.

*Id.* at 775 (citing *Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384, 386 (Minn. 1980)). Again, in the present case, the unrefuted evidence in the record indicates that the receptionist position required substantially less skill than the billing clerk position.

The Commissioner's representative concluded Polley did not have good cause to quit her job because she "did not meaningfully communicate to [Gopher] her dissatisfaction with the reduction in her work hours." However, there is no evidence in the record to support this finding. Rather, Polley testified that, upon her return from maternity leave, she complained about her hours and stated that she needed to work full-time. Fraser did not dispute Polley's claim that she had expressed dissatisfaction with her new hours. Fraser agreed that Polley could not support her family on part-time hours, and therefore guaranteed her 35 hours per week, and more if possible. Despite this promise, Polley's hours were subsequently reduced to 32.5 hours per week.

■ Where an employee complains about unsatisfactory working conditions and receives a reasonable "expectation of assistance," the employee has the duty to complain further if the conditions persist. *See Larson v. Dep't of Economic Security*, 281 N.W.2d 667, 669 (Minn.1979). Here, Polley did not receive an expectation of assistance from Gopher; rather, after she complained, her hours were again decreased. Accordingly, Polley was not required to complain further about her reduced hours. *Cf. Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662 (Minn.App.1985):

Porrazzo admits that he did not seek assistance from his employer immediately before quitting. However, he was given no assurance and had no expectation of assistance from the employer. Earlier discussions with representatives of the employer resulted merely in the statement that Porrazzo was expected to work the matters out with his direct supervisor even though the supervisor was the source of many of his difficulties. Further, Porrazzo did attempt to resolve his problems through his supervisor as directed. The employer, through that supervisor, must be deemed to have had knowledge of Porrazzo's continuing problems.

*Id.* at 664.

■ Although Polley was not required to complain further before quitting, she did state to her employer that she was quitting to stay home with her family. However, since Gopher was sufficiently notified of Polley's dissatisfaction with her new hours and duties, we conclude her subsequent gratuitous statement has no impact on her entitlement to unemployment benefits. *See Baker v. Fanny Farmer Candy Shops No. 154*, 394 N.W.2d 564, 567 (Minn.App. 1986) (employee who continues to work after complaining does not waive good cause to quit).

## DECISION

The Commissioner's determination that Polley did not have good cause to quit is unsupported by the record and erroneous as a matter of law.

Reversed.

SHORT, Judge (dissenting).

I respectfully dissent because (1) the Commissioner's conclusion of comparability is supported by the record and applicable

law, and (2) Polley failed to give her employer notice of the complained-of conditions.

First, I find no basis either in the record or in existing law to reverse the Commissioner's conclusion of comparability. The record demonstrates the position given to Polley upon her return [1] was comparable in terms of duties, hours, and pay to the position she held prior to her leave. Although the general manager admitted Polley's new job responsibilities were different, he testified those responsibilities were of no less value or importance to the company because Polley was now the primary interface between the company and its customers. This assessment of equal value is also reflected in the fact that Polley received the same rate of pay as she did in her former position. The general manager also guaranteed Polley at least 35 hours per week, and assured her of an increase to 40 hours as additional duties or positions in the company arose. While Polley testified her supervisor told her in early July that her hours would be cut back, the record demonstrates Polley actually worked at least thirty-seven hours per week during the weeks leading up to her departure on August 14, 1990.

Minnesota's Parenting Leave Act, Minn. Stat. §§ 181.940–.944 (1990), requires only that an employee returning from parenting leave be "entitled to return to employment in the employee's former position or in a position of comparable duties, number of hours, and pay." Minn.Stat. § 181.942 (1990). "Comparable" does not mean "identical" or "equal." See Brennan v. City Stores, Inc., 479 F.2d 235, 238 (5th Cir.1973) (when Congress enacted the Equal Pay Act, 29 U.S.C. 206(d), it chose to require equal pay for employees in positions of "equal" and not "comparable" skill, effort, and responsibility, and this reflects Congress' decision to adopt the narrower standard of "equality" or "substantial equivalence" rather than the broader standard of "comparability" in mandating

equal pay for equal work). See also Minn. Stat. § 471.991, subd. 3 (1990) (defining "comparable work value" as "the value of work measured by the skill, effort, responsibility, and working conditions normally required in the performance of the work"). Under these circumstances, the position given to Polley upon her return was comparable.

Second, Polley's failure to give her employer notice of its alleged violation of the Parenting Leave Act should preclude her from relying on that violation as good cause for terminating her employment so as to enable her to receive unemployment benefits. This court has required notice when an employee seeks to rely on alleged sexual harassment as "good cause attributable to the employer" for terminating employment under Minn.Stat. § 268.09, subd. 1(a) (1986). *Biegner v. Bloomington Chrysler/Plymouth, Inc.*, 426 N.W.2d 483, 486 (Minn.App.1988). In *Biegner*, we stated:

> An employee subjected to harassment has the burden of demonstrating that he gave his employer notice of sexual harassment, but the employer failed to take timely and appropriate action.

*Id.* We have also held on numerous occasions that when an employee seeks to rely on offensive working conditions as good cause for terminating employment, the employee must report the allegedly offensive working conditions to the employer so as to give the employer an opportunity to address them. Failure to give notice disqualifies an employee from receiving unemployment benefits. *See, e.g., Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 382 (Minn.App.1987); *Tru–Stone Corp. v. Gutzkow*, 400 N.W.2d 836, 838 (Minn.App. 1987); *Burtman v. Dealers Discount Supply*, 347 N.W.2d 292, 294 (Minn.App.1984), *pet. for rev. denied* (Minn. July 26, 1984).

Moreover, once an employer provides an employee with a reasonable expectation of assistance to rectify the complained-of con-

1. Before her maternity leave, Polley informed the general manager that if her husband found permanent employment she intended to remain at home with her children. This uncertainty as to Polley's return to work was cited by the employer as the reason he hired a replacement to fill Polley's position as billing clerk.

ditions, the burden remains on the employee to fully apprise the employer of any continuing harassment or offensive conditions. If the employee fails to do so, the employer cannot be charged with having caused the employee's unemployment. *Larson v. Dept. of Economic Security,* 281 N.W.2d 667, 669 (Minn.1979); *Biegner,* 426 N.W.2d at 486; *Youa True Vang v. A–1 Maintenance Serv.,* 376 N.W.2d 479, 482–83 (Minn.App.1985). After returning from her leave on May 1, Polley expressed concern to the general manager about her need to continue working full time. The general manager's assurance of guaranteed hours and of his efforts to find more work for her were sufficient to create a reasonable expectation of assistance. *See, e.g., Larson,* 281 N.W.2d at 669; *Youa True Vang,* 376 N.W.2d at 483. Yet when Polley quit her job, she said her reason for doing so was to stay home with her baby. Under these circumstances, the Commissioner was correct in concluding "the employer clearly was given no reasonable opportunity to respond to the claimant's true complaints in a manner which prospectively may have saved the employment relationship."

I would therefore affirm the Commissioner's decision.