Raymond O. HANKE, Relator,

v.

SAFARI HAIR ADVENTURE,
Commissioner of Jobs and,
Training, Respondents.

No. C3–93–1918.

Court of Appeals of Minnesota.

March 1, 1994.

Thomas Ewald, Minneapolis, for Relator.

Lee B. Nelson, Minnesota Dept. of Jobs and Training, St. Paul, for respondents.

Considered and decided by PARKER, P.J., and HUSPENI and FOLEY,* JJ.

## OPINION

DANIEL F. FOLEY, Judge.

Raymond Hanke seeks review by certiorari of a decision issued by a Commissioner's representative with the Department of Jobs and Training. The Commissioner's representative concluded that Hanke did not have good cause to quit his job with respondent Safari Hair Adventure (Safari), and therefore should be disqualified from receiving unemployment compensation benefits. On appeal, Hanke claims that he had good cause to quit his job with Safari Hair Adventure as a result of harassment by a management level employee.

The record demonstrates that Hanke was harassed as a result of his sexual orientation, and that he complained to Safari's owner, but was not given any reasonable expectation of assistance. Accordingly, we conclude that Hanke had good cause to quit his job with Safari and is not disqualified from receiving unemployment benefits.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

## FACTS

Raymond Hanke was employed as a hair stylist for Safari Hair Adventure (Safari). Hanke voluntarily quit his job with Safari in April 1993, alleging discrimination and harassment based on sexual orientation. Hanke is openly gay.

Hanke applied for unemployment compensation benefits, and a referee with the Department of Jobs and Training conducted a hearing.

Hanke testified that Lisa Wier, a Safari employee with a manager's license, told him on several occasions that she was going to "get [him] married to a girl if she had anything to do with it." On one occasion, Wier told Hanke that she did not want "a bunch of fags in this salon." Hanke told Wier that by attacking others in that way, she was attacking his sexuality. Wier responded that she intended, if possible, to get him married to a girl.

Hanke testified that he did not complain to Safari's owner and manager, Vernon Cole, about Wier's comments because he believed that Cole was biased against homosexuals. According to Hanke, a receptionist had overheard Cole tell a customer that he "had to" hire a homosexual. Cole denied the comment.

In April 1993, Hanke received a "Goals and Objectives" document from Cole, indicating that Hanke should make a list of groups and organizations that could assist him in expanding his clientele. Shortly thereafter, Hanke was approached by a contributor to the Equal Times directory—a publication listing community services available for gays and lesbians. Hanke wanted to place his name in the directory, and he spoke that same day with Alan Rausch, whom he believed to be the acting manager of Safari in Cole's absence. Rausch informed Hanke that he felt the publication was a good idea. Hanke believed that he had received permission, and he therefore agreed to place his name in the directory. Safari's position, however, was that Rausch had told Hanke

art. VI, § 10.

that he should check with Cole before placing his name in the directory.

Cole met with Hanke and discussed the advertisement in the Equal Times directory. According to Hanke, Cole stated that he did not want Safari listed in a publication such as Equal Times. According to Cole, he simply told Hanke that such decisions should be discussed with him first.

During the parties' conversation, Hanke informed Cole about Wier's comments regarding his sexual orientation and homosexuals in general. Cole responded that he did not believe Wier was capable of making those comments. Cole also told Hanke that he wanted Hanke and Wier to talk to each other and get the matter resolved. According to Cole, he could not "control the opinions of what other people feel or think." The conversation ended with Hanke stating that he could not work at Safari anymore, and that he was quitting.

The referee, after considering the above evidence, concluded that Safari had not harassed Hanke or discriminated against him. The referee also concluded that Hanke had not provided his employer with an opportunity to resolve his complaints. The referee concluded that Hanke did not have good cause to quit his job with Safari.

Hanke appealed to a Commissioner's representative, who affirmed the referee's findings and decision. The Commissioner's representative found that Wier had made "homophobic comments" to Hanke, but that Hanke had "failed to meaningfully communicate to the employer prior to his last day of work" that Wier had made such comments or that the comments were offensive to him.

### ISSUES

I. Was Hanke subjected to harassment based on his sexual orientation?

II. Did Hanke adequately apprise Safari of the alleged harassment before terminating his employment?

### ANALYSIS

■ An individual who voluntarily quits a job without "good cause attributable to the employer" is disqualified from receiving un-

employment compensation benefits. Minn. Stat. § 268.09, subd. 1(a) (1992). It is undisputed that Hanke voluntarily quit his job with Safari; the only issue is whether Hanke had good cause attributable to Safari to quit. Hanke had the burden of proof on this issue. *See Marz v. Department of Employment Servs.*, 256 N.W.2d 287, 289 (Minn.1977) (employee has burden of showing he left job for good cause attributable to employer). The unemployment statutes are remedial and must be liberally construed in favor of awarding benefits to one unemployed through no fault of his own. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221–22 (Minn.1981).

■ This court will review the Commissioner's representative's factual findings to determine whether there is evidence in the record reasonably tending to sustain them. *White v. Metropolitan Medical Ctr.*, 332 N.W.2d 25, 26 (Minn.1983). But whether an employee had "good cause" to quit is a question of law that "is not binding on this court if it does not have reasonable support in the findings." *Zepp v. Arthur Treacher Fish & Chips, Inc.* 272 N.W.2d 262, 263 (Minn.1978).

"Good cause" to quit has been defined as a reason that is "real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances." *Ferguson v. Department of Employment Servs.*, 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976). "Good cause" does not require employer negligence or wrongfulness. *Hanson v. I.D.S. Properties Management Co.*, 308 Minn. 422, 425 n. 1, 242 N.W.2d 833, 835 n. 1 (1976). The standard for determining good cause is "the standard of reasonableness as applied to the average man or woman, and not to the supersensitive." *Ferguson*, 311 Minn. at 44 n. 5, 247 N.W.2d at 900 n. 5.

### I.

■ The Minnesota appellate courts have not previously addressed the issue whether harassment based on sexual orientation may provide an individual with good cause to quit. But sexual harassment may provide an em-

ployee with good cause to quit. Minn.Stat. § 268.09, subd. 1(a). Sexual harassment includes "communication of a sexual nature" when such communication "has the * * * effect of * * * creating an intimidating, hostile, or offensive working environment and the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action." *Id.*

Similarly, we conclude that harassment based on an employee's sexual orientation[1] provides an employee with good cause to quit if the harassment creates an offensive working environment and the employer knows or should know of the harassment, but fails to take timely and appropriate action. *See Larson v. Department of Economic Sec.,* 281 N.W.2d 667, 669 (Minn.1979) (harassment—not sexual harassment—did not give employee good cause to quit when employee did not report continued harassment as instructed to do so by employer); *Tru–Stone Corp. v. Gutzkow,* 400 N.W.2d 836, 838 (Minn.App. 1987) (harassment—not sexual harassment—by coworkers provides an employee with good cause to quit if the employee gives sufficient prior notice of the harassment to the employer).

▪ The referee and the Commissioner's representative found that Wier made homophobic comments to Hanke. The Commissioner's representative found that other incidents of alleged harassment asserted by Hanke were unsubstantiated, and therefore were unproven. We will generally defer to the Commissioner's representative's credibility determinations. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.App.1984). In the present case, adopting the Commissioner's representative's credibility determinations, Hanke's claim of harassment was based on Wier's comments to the effect that she did "not want a bunch of fags in this salon," and that she intended, if possible to get Hanke married to a girl.

Both the referee and the Commissioner's representative concluded that although Hanke was understandably upset by Wier's comments, the evidence failed to establish that Hanke was subjected to harassment or discrimination based on his sexual orientation. We disagree. The record demonstrates that the homophobic comments by Wier had the effect of creating an offensive working environment for Hanke.

## II.

▪ The Commissioner's representative also found that Hanke had failed to meaningfully convey his concerns to Safari before he quit. "[N]otice of harassment to management is essential to a claim for [unemployment] benefits." *McNabb v. Cub Foods,* 352 N.W.2d 378, 382 (Minn.1984) (citing *Larson,* 281 N.W.2d at 669).

We need not address Hanke's claim that, in light of Wier's managerial status, her knowledge of the harassment should be imputed to Safari. The record indicates that Hanke conveyed his concerns about the alleged harassment directly to Cole prior to terminating his employment. Cole admitted that Hanke told him about Wier's comments during the course of the parties' final conversation. Cole responded that he did not believe Wier was capable of making those comments. Cole also told Hanke that he wanted Hanke and Wier to talk to each other and get the matter resolved. Cole testified that he could not "control the opinions of what other people feel or think."

▪ In *McNabb,* the court stated that [t]he failure of management to timely discipline employees is strong evidence of acquiescence in discriminatory practices by subordinates. * * * An employer must act to prevent and correct harassment when it becomes aware of the problem. *Id.* at 384 (citation omitted). If an employee has complained about harassment and has received no assistance or expectation of assistance, the employee has good cause to quit. *See Tru–Stone,* 400 N.W.2d at 837–38 (employee had good cause to quit when he received no "reasonable expectation of assis-

---

1. Notably, the legislature has recently enacted a prohibition against employment discrimination based on sexual orientation. Minn.Stat. § 363.-03, subd. 1 (Supp.1993). Although this statute was not in effect at the time of Hanke's employment, the statute would appear to evidence a legislative concern with the vulnerabilities and rights of gays and lesbians.

tance" from employer after complaining of harassment). In the present case, Cole's responses to Hanke's concerns were insufficient to provide him with any reasonable expectation of assistance.

## DECISION

The record demonstrates that Hanke was subjected to harassment based on his sexual orientation. Hanke complained to his employer, but received no reasonable assurances or expectation of assistance. Accordingly, Hanke had good cause to quit his job, and is not disqualified from receiving unemployment compensation benefits.

**Reversed.**