## VIOLA E. NYBERG v. R. N. CARDOZO & BROTHER, INC., AND ANOTHER.[1]

December 31, 1954.

No. 36,302.

*Todd, McCloud & Mackey,* for relator.

*Oppenheimer, Hodgson, Brown, Baer & Wolff* and *John G. Robertson,* for respondent R. N. Cardozo & Brother, Inc.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for respondent Victor Christgau, Commissioner of Employment Security.

DELL, CHIEF JUSTICE.

Certiorari to the department of employment security to review the decision of the commissioner[2] disqualifying relator for unemployment compensation benefits.

---

[1] Reported in 67 N. W. (2d) 821.

[2] Since the institution of this proceeding but prior to the final decision, the powers and duties of the director of the division of employment and security have been transferred to the commissioner of the department of employment security. L. 1953, c. 603, § 1.

Relator, a 46-year-old unmarried woman, entered the employment of the respondent R. N. Cardozo & Brother, Inc., hereinafter referred to as the employer, on March 13, 1946. The employer operates a large retail furniture establishment in the downtown section of St. Paul and is subject to the Minnesota employment security law.[3] Relator was hired as a secretary to the Cardozo brothers and Saul L. Selle, then the general manager. A large portion of her time was devoted to handling many of the complaints and adjustments from both customers and suppliers subject to Selle's supervision. For the most part she worked under his immediate supervision. Her job was carried on in a busy atmosphere and under some degree of pressure and high tension. It was necessary to obtain Selle's permission before making certain adjustments, and she frequently was required to consult with him. Relator testified that on numerous occasions, occurring at least weekly, Selle would swear and curse loudly in her presence in an increasingly high-pitched voice.

In July 1951 relator was offered a position with a railroad but declined because of inconvenient working hours, transportation difficulties, and, according to her, because Selle promised to make things easier for her at Cardozo's. Selle denied making such a promise. Relator claimed that during the last two years the use of profanity and screaming on the part of Selle became increasingly worse until finally on October 16, 1952, during an encounter with Selle, it became so bad she voluntarily left the employment. While relator did not claim that ill health precluded her from working, she did testify that Selle's actions impaired her health and nervous system.

Selle admitted using profanity in relator's presence and talking loudly. He denied screaming or that any of the swearing was directed at her or that she objected to it. He claimed that she occasionally used profanity in his presence, and he was corroborated in this respect by the testimony of the employer's comptroller.

Relator filed a claim for unemployment compensation and it was determined by a claims deputy that she voluntarily discontinued her employment with good cause attributable to the employer. It was

---

[3] M. S. A. 268.03 to 268.24.

ordered that benefits paid, if any, should be charged to the employer's experience rating account. This decision was reversed by an appeal tribunal, the chairman of the tribunal sitting alone because of the unavoidable absence of his associate members. Pursuant to application made to the commissioner of the department of employment security, the findings and decision of the appeal tribunal were set aside and the matter remanded to the tribunal for the purpose of receiving additional evidence and making new findings. Thereafter the hearing was held and additional evidence taken. The appeal tribunal, consisting of the chairman, the employers' representative, and the employees' representative, unanimously decided that the relator voluntarily discontinued her employment without good cause attributable to the employer and ordered that she be disqualified for unemployment benefits for three weeks of unemployment in addition to and following the waiting period.[4] The tribunal further ordered that benefits paid, if any, should not be charged to the employer's experience rating account. On appeal to the commissioner of the department of employment security, the decision of the appeal tribunal was affirmed and its findings and decision adopted by the commissioner.

There was but one question for the commissioner to determine and that is whether, under all the facts and circumstances of this case, the relator discontinued her employment because of good cause attributable to her employer. Relator contends that her supervisor's frequent and regular use of profanity in a loud and sometimes screaming voice constituted good cause and that the contrary finding by the commissioner was a flagrant abuse of discretion. The employer, on the other hand, argues that the question of profanity is but one aspect of the case and that, viewing the facts and circumstances in their entirety, there is ample evidence to support the commissioner's decision that relator's termination of employment was without good cause.

[4]Under M. S. A. 268.09, subd. 1(1), the minimum period of disqualification is three weeks and the maximum is seven weeks.

While the evidence is in some respects conflicting, the record before us fairly shows that the conduct of relator's supervisor, Selle, admitted in part by his own testimony, warrants severe censure and cannot be condoned. No employee, particularly a woman, should be expected to work, at the risk of losing unemployment compensation benefits, in an atmosphere where there is frequent cursing or similar conduct on the part of her employer or anyone acting under his control. Common decency and his sense of self-respect should restrain him from conduct of the kind revealed by the record here. Were we the triers of the facts, a result might well have been reached different from that of the commissioner. However, we are not privileged to weigh the evidence and make a determination as to where the preponderance lies.[5] The scope of our review on appeal from decisions of administrative boards has been clearly defined. While we may examine the evidence we can do so only for the purpose of determining whether it reasonably supports the decision. In Chellson v. State Div. of Employment & Security, 214 Minn. 332, 336, 8 N. W. (2d) 42, 45, we said:

"* * * Where there is any evidence reasonably tending to sustain the findings of the director they will not be disturbed on review. In reviewing an order or determination of an administrative board, the supreme court will go no further than to determine whether the evidence was such that the board might reasonably make the order or determination which it made."

This principle has been so frequently reiterated by this court that there can be no doubt as to the limits of review by which we are bound.[6]

---

[5]State ex rel. Rockwell v. State Board of Education, 213 Minn. 184, 6 N. W. (2d) 251, 143 A. L. R. 503.

[6]Bucko v. J. F. Quest Foundry Co. 229 Minn. 131, 38 N. W. (2d) 223; Hamlin v. The Coolerator Co. 227 Minn. 437, 35 N. W. (2d) 616; Bowman v. Troy Launderers & Cleaners, Inc. 215 Minn. 226, 9 N. W. (2d) 506; Ley v. Doherty, 215 Minn. 104, 9 N. W. (2d) 327; State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759; see, 1 Dunnell, Dig. (3 ed.) § 397b.

The appeal tribunal unanimously found that both relator and her supervisor, Selle, worked under pressure; that on October 16, 1952, relator had been handling complaints; that near the end of the day she entered Selle's office and demanded that he take care of certain matters which he declined and refused to do at that time; that she thereupon advised him that she was quitting and leaving his employment. In its reasons for its decision, the tribunal stated that it is a rule which has been followed closely that, where a claimant quits his employment because of abuse or maltreatment, he leaves with good cause attributable to the employer and is not subject to disqualification. It stated that the incident which occurred on the day that relator quit was one in which Selle refused to immediately take care of a matter which relator deemed important; that Selle had other matters which he believed were of greater importance at that time, and it was within his prerogative to judge which he would handle first. Under these circumstances it concluded that relator voluntarily and without good cause attributable to the employer discontinued her employment. It cannot be denied that there is evidence supporting the findings and determination of the appeal tribunal and the commissioner. That the conduct of Selle was not the primary motivating factor is supported by the fact that relator had tolerated similar outbursts off and on for a period of six years. Under the evidence it appears that she, too, was at times guilty of similar conduct, but to a lesser extent. Furthermore, she refused an offer of another position which would have relieved her of the unpleasant working conditions. There was a great deal of conflicting evidence bearing on the nature of the conduct of the parties and the effect that it had. It was for the triers of fact to evaluate the evidence and resolve these conflicts. Despite relator's testimony to the contrary, we conclude that there was evidence tending to show that the nature of her employment rather than the employer's conduct was the actual cause for her leaving. Under these circumstances we are not prepared to say that it would not be possible for different men to reasonably arrive at different conclusions.[7]

[7]See, Sommers v. City of St. Paul, 183 Minn. 545, 552, 237 N. W. 427, 430.

Relator assigns as error the failure to make findings of fact as to whether profanity was used as alleged and whether it was abusive toward the relator. While it would have been more satisfactory if specific findings had been made regarding these matters,[8] the failure to do so is of little consequence in this case. The decision of the appeal tribunal, approved and adopted by the commissioner, is divided into three parts, the "Findings of Fact," "Reasons for Decision," and the "Decision." The instrument must be considered as a whole. It clearly appears from the "Reasons for Decision" that all the factual questions, including whether profanity was used and whether it was abusive toward relator, were actually considered and resolved in making the determination and arriving at the decision. Remanding the case for additional findings would serve no useful purpose since it clearly appears that all available evidence on the issues has been presented and considered.

The decision of the commissioner affirming the findings of fact and decision of the appeal tribunal must be affirmed.

Affirmed.

[8]See, Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. (2d) 888.