Donald L. TURNQUIST, Relator,

v.

AMOCO OIL COMPANY, Department of Jobs and Training, Respondents.

No. C7–86–1062.

Court of Appeals of Minnesota.

Dec. 16, 1986.

Corey J. Ayling, Minneapolis, for Donald L. Turnquist.

Richard W. Davis, St. Paul, for Amoco Oil Co.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for Dept. of Jobs and Training.

Heard, considered and decided by WOZ-NIAK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

The Commissioner's representative denied relator's request for a remand to introduce additional evidence, and determined that he should return unemployment benefits which he had already received. We affirm.

## FACTS

Relator Donald Turnquist had been employed as a fuel oil truck driver for 15 years when he was discharged by Amoco Oil Company on October 28, 1985, for, according to Amoco, violating company rules.

At the time of Turnquist's employment, Amoco had a specific written policy indicating the procedures drivers should follow in the event of a fuel spill. If a portion of a spill flowed into a stream or sewer, the employee was required to notify the home terminal and the local fire department. Any employee who failed to report this type of spill was subject to suspension, and if a second violation occurred, the employee was subject to discharge.

Turnquist had received copies of the policy, and was aware of Amoco's reporting rules. Upon two prior occasions, when he failed to report spills which had entered sewers, he was suspended for violating Amoco's policy. Although he testified that drivers had discretion whether or not to report spills, and stated that Amoco did not "press" the reporting policy because the drivers' schedules were more important, Turnquist's fleet supervisor testified that the reporting requirement was an "[a]bsolute, firm, unequivocal rule."

A Department referee determined that Turnquist's latest violation of the reporting policy demonstrated a "willful disregard" of Amoco's interests and therefore constituted disqualifying misconduct under the unemployment compensation laws. Turnquist appealed to a Commissioner's representative, requesting that the matter be remanded to the referee so that he could introduce additional evidence on Amoco's enforcement of the reporting policy. Specifically, Turnquist requested that he be allowed to present additional evidence which would demonstrate that Amoco actually discouraged reporting and only disciplined drivers when an independent third party reported a spill.

The Commissioner's representative affirmed the referee's decision and denied Turnquist's request for remand. Turnquist has appealed from that order and from an order requiring him to now repay the unemployment benefits which he had already received.

## ISSUES

1. Did the Commissioner's representative abuse his discretion by refusing to remand for the introduction of additional evidence?

2. Did the Commissioner's representative erroneously determine that Turnquist must repay the benefits which he has already received?

## ANALYSIS

### I.

*Misconduct*

Turnquist admits the evidence in the record is sufficient to support the Commissioner's determination that he was discharged for misconduct. However, he claims the Commissioner's representative should have granted his request for remand to the referee so that he could present additional evidence on Amoco's actual spill reporting policy. He alleges this evidence would prove that, in fact, Amoco discouraged its drivers from reporting spills and enforced its written policies only when a third party complained to the authorities.

Turnquist claims that the Commissioner's representative's refusal to remand was premised upon an erroneous theory of law and was therefore an abuse of discretion. Turnquist points to the following passage in the representative's memorandum:

The claimant would attempt to show that the employer has chosen not to discharge

other individuals who have failed to report spills, and that the employer itself has failed to notify proper authorities in regard to large spills at its terminals. This Representative is not convinced that the offer of proof would necessarily affect the outcome of this case. Corporate irresponsibility does not go to the question of the claimant's misconduct. The claimant cannot be absolved of wrongful conduct simply by showing that the employer has participated in other wrongful conduct.

As Turnquist claims, the above analysis by the Commissioner's representative is incorrect. The following definition of "misconduct" is provided by *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973):

> [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an *employer's interests* as is found in deliberate violations or disregard of standards of behavior *which the employer has the right to expect of his employee,* or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the *employer's interests* or of the employee's duties and obligations *to his employer.*

*Id.* at 374–75, 204 N.W.2d at 646 (emphasis supplied). Thus, if Amoco intentionally did not notify authorities, did not discharge other employees who failed to report spills, and actually discouraged reporting, Turnquist's failure to report was not necessarily "substantial disregard" of his employer's interests. Amoco claims that *Sivertson v. Sims Security Inc.*, 390 N.W.2d 868 (Minn. Ct.App.1986), *pet for rev. denied,* (Minn. Aug. 20, 1986) is controlling and in their favor. We do not find *Sivertson* controlling in this case, but affirm for other reasons.[1]

■ Although the Commissioner's representative erroneously reasoned that, even if Amoco's policies were as Turnquist said they were there was no reason to remand as Turnquist still had no defense, we can affirm the decision not to remand as it was also based on the representative's finding that Turnquist had already received sufficient opportunity to present evidence regarding Amoco's actual policies:

> The parties were notified, in an instruction sheet attached to the notice of hearing before the Referee, that the hearing before the Referee would be their sole opportunity to present evidence in this matter. The parties were also notified of their right to subpoena any information necessary to support their case, and to be represented by legal counsel if they chose * * *. The court made it clear in *Jeane Thorne Temporary Service, Inc. v. Elliott,* 351 N.W.2d 393 (Minn.App. 1984) that no party has the absolute right to a rehearing simply because his initial evidence was unpersuasive * * *. The claimant was aware of the reasons for his discharge from employment and was aware of the employer's contentions. Nothing in the record shows that the proceedings were unfair to the claimant.

■ In fact, the transcript reveals that Turnquist did testify that Amoco discouraged its employees from reporting spills. Amoco's representatives rebutted that testimony, stating that the written policy was "absolute." The referee and the Commissioner's representative chose to believe Amoco's evidence. We will not second guess the representative's determinations regarding credibility. *Nyberg v. R.N. Cardozo Brother, Inc.,* 243 Minn. 361, 67 N.W.2d 821 (1954).

Minn.R. pt. 3310.3800, subp. 2 (1985) gives the Commissioner's representative discretion to remand for the taking of additional evidence. This court will not overturn that exercise of discretion based merely upon a party's failure to submit testimo-

---

1. In *Sivertson,* the employee admittedly violated the employer's rule, but argued that it was unfairly applied to him because it was not consist-
ently enforced. Here, on the other hand, Turnquist argues that he never actually violated Amoco's real rules at all.

ny. *See Kampa v. Normandale Tennis Club*, 393 N.W.2d 195 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. Nov. 17, 1986); *Drellack v. Inter-County Community Council Inc.*, 366 N.W.2d 671, 675 (Minn. Ct.App.1985); *Machovec*, 358 N.W.2d at 156; *Jeane Thorne*, 351 N.W.2d at 395–96.

We do note that Turnquist was not represented by counsel at the hearing before the referee. However, in a similar situation this court has stated:

> The Commissioner did not err by refusing to remand the matter for additional testimony solely because relator was not represented by counsel and did not present all the testimony it now feels would be helpful.

*Schultz v. Machovec Food Market*, 358 N.W.2d 155, 156 (Minn.Ct.App.1984).

## II.

### Return of Benefits

Turnquist also claims he should not be required to refund the unemployment benefits which he has already received. While benefits erroneously paid to an individual must ordinarily be returned, Turnquist cites the following exception, claiming it is applicable to his situation:

> In the absence of fraud, if a redetermination of validity of claim based on an employer's late report subsequently cancels or reduces the amount of benefits to which a claimant was entitled under the initial determination, the claimant shall not be required to make repayment to the fund of any benefits paid to him prior to such redetermination * * *.

Minn.Stat. § 268.10, subd. 1(3)(a) (1984). Turnquist claims this section is applicable because Amoco delayed its response to the Commissioner's request for a "reason for the separation" and "protest, if any," pursuant to Minn.Stat. § 268.10, subd. 1(2)(d) and (e) (1984).

We do not construe Minn.Stat. 268.10 as Turnquist urges. The placement of the cited provision within the framework of the entire statute indicates that a claimant may retain benefits which were erroneously paid *only if* the department's redetermination of validity is made prior to the claimant's appeal to a referee, which is not the case here. In addition, the statute distinguishes between challenges to the "validity of a claim" and challenges based upon "issues of disqualification" (i.e., misconduct). The provision cited by Turnquist concerns the validity of claim, whereas this appeal concerns disqualification issues. Thus, Minn.Stat. § 268.10 is inapplicable to Turnquist's situation and does not entitle him to keep benefits erroneously paid.

## DECISION

The Commissioner's representative properly denied relator's request for remand, and correctly determined that relator must return the unemployment benefits which were erroneously paid to him.

Affirmed.