**TUCKERMAN OPTICAL CORP., Relator,**

v.

**Karen THOENY, Commissioner of Jobs and Training, Respondents.**

No. CX–87–31.

Court of Appeals of Minnesota.

June 16, 1987.

Terence M. Fruth, Leslie T. Sinner, Furth & Anthony, P.A., Minneapolis, for Tuckerman Optical Corp.

J. Michael Hirsch, Dale M. Wagner, Moss & Barnett, Minneapolis, for Karen Thoeny.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Heard, considered and decided by WOZNIAK, P.J., LESLIE and MULALLY\*, JJ.

## OPINION

MULALLY, Judge.

Relator Tuckerman Optical appeals by writ of certiorari from a determination that its employee, respondent Karen Thoeny, was discharged for reasons other than misconduct. We affirm.

## FACTS

Karen Thoeny worked for Tuckerman Optical from November 1983 until July 14, 1986, first as an optician trainee, and subsequently as store manager of Tuckerman's Ridgedale store. According to Thoeny's supervisor, she was a good manager and needed little supervision.

Tuckerman's store managers were furnished with an operations manual, which stated that any manager who knowingly approved the false reporting of an employee's hours would be terminated immediately. Thoeny was aware of that policy.

Tuckerman scheduled quarterly inventories of its stores, which were performed after business hours. Because Tuckerman did not want to pay overtime, if an employee was scheduled to work on the inventory, his regular hours for that week were to be reduced so that his total hours for the week, including the inventory hours, would be 40. Store managers were therefore required to estimate in advance the time necessary to perform an inventory.

Thoeny testified that it was her understanding that, for purposes of inventory only, employees could be paid for the hours they were scheduled to work, even if they completed the inventory early. For her June 28, 1986 inventory, Thoeny scheduled her employees to work until 10:00 p.m. but, in fact, the inventory was completed at 8:30 p.m. With Thoeny's authorization, the employees indicated on their time sheets that they had worked until 10:00. Thoeny's supervisor informed Tuckerman of the discrepancy and Thoeny was discharged.

Thoeny applied for unemployment compensation, and the Department of Jobs and Training held a hearing to determine whether her actions amounted to misconduct disqualifying her from the receipt of benefits. At that hearing, Thoeny's supervisor testified on behalf of Tuckerman. He stated that he had never authorized Thoeny to deviate from Tuckerman's regular time-card policy.

Thoeny and several witnesses testified on her behalf. Thoeny's assistant manager testified that in March, 1986, Thoeny's employees had finished the store inventory at 8:30, instead of 11:30 as scheduled. She stated that right after the March inventory,

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

she heard Thoeny ask her supervisor whether the employees should have signed out at 8:30. According to the assistant manager, Thoeny's supervisor replied: "[N]o, don't worry about it, you guys are organized, you did a good job, don't worry about it."

Regarding the June inventory, the assistant manager testified:

I was in the back room when [Thoeny] was discussing in the phone conversation with [her supervisor] about the inventory and then again she had brought up our discrepancy in time.

\* \* \* \* \* \*

And then she had gotten off the phone and said that [the supervisor] told me not to worry about my time discrepancy and he told me to pack up my inventory and send it out without his approval because we had done a good job the time before.

Thoeny testified that after the June inventory she informed her supervisor that the inventory had been completed at 8:30, ahead of schedule, and asked whether her employees should still sign out at 10:00. According to Thoeny, the supervisor responded as follows: "He said don't worry about it, you know. I mean that's the way that we have done it."

A previous store manager for Tuckerman also testified on Thoeny's behalf. That witness agreed that, for inventory purposes only, Tuckerman's verbal policy was to allow employees to sign out at their scheduled time if they finished an inventory early. According to that witness, she had learned of the policy from her area manager, who was "quite by the book."

Following the hearing, a Department referee determined that Thoeny did not have her area manager's approval to deviate from Tuckerman's regular timecard policy. The referee thus concluded that Thoeny had been discharged for reasons amounting to misconduct. Thoeny appealed to a Commissioner's representative, who reversed, reasoning that Thoeny's testimony was "heavily substantiated" by the testimony of other witnesses, and that neither Thoeny nor those other witnesses had any reason to lie. The representative concluded:

We strongly believe that the claimant acted innocently, and that she had no intent to be disobedient or to harm the employer.

## ISSUE

Does the record support the Commissioner's determination that Thoeny did not engage in misconduct?

## ANALYSIS

■ Minn.Stat. § 268.09, subd. 1(2) (1986) provides that an individual who is discharged for misconduct is not entitled to receive unemployment compensation benefits. The employer has the burden of proving misconduct. *Sandstrom v. Douglas Machine Corp.*, 372 N.W.2d 89, 91 (Minn. ·Ct.App.1985). A good faith misunderstanding of the employer's rules or policies does not constitute misconduct. *Norman v. Campbell-Logan Bindery*, 376 N.W.2d 723, 725 (Minn.Ct.App.1985). The issue is not whether there has been justification for the employee's discharge, but whether the employee is entitled to receive benefits. *St. Williams Nursing Home v. Koep*, 369 N.W.2d 33, 34 (Minn.Ct.App.1985).

■ This court should review the evidence in the light most favorable to the representative's findings, which must be upheld if there is evidence in the record reasonably tending to sustain them. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). In other words, this court cannot reweigh the evidence and determine where the preponderance lies. *Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954). The representative's findings, and not those of the referee, are subject to review by this court. *Tester v. Jefferson Lines*, 358 N.W.2d 143, 145 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. March 13, 1985). Conclusions of law, however, are not binding if they are not reasonably supported by the representative's findings of fact. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). Whether an employee has engaged in misconduct is a mixed

**494**

question of fact and law. *Colburn v. Pine Portage Madden Bros., Inc.,* 346 N.W.2d 159, 161 (Minn.1984).

■ Here, each of the representative's findings is supported by the record. Most importantly, there is substantial evidence in the record to support the representative's finding that Thoeny acted innocently and had no intent to be disobedient or harm the employer. The evidence cited by Tuckerman is merely the contradictory evidence presented at the hearing, which the representative chose to disbelieve. Since there is ample evidence in the record to support the representative's findings, Tuckerman's disputes regarding the facts do not support reversal of the representative's decision.

Tuckerman cites numerous cases in support of its argument that Thoeny engaged in misconduct. In each of these cases, however, the employee was found to have knowingly violated the employer's policies. Such is not the case here.[1]

Finally, we believe that the representative's reasoning is more persuasive than that of the referee. Falsification of the employees' time cards would have served no purpose in Thoeny's case. She was paid a salary, not an hourly wage; thus she would have not benefited monetarily by her actions.

### DECISION

There is ample support in both the record and the law for the Commissioner's decision.

Affirmed.

---

1. The arguments in Tuckerman's brief concerning overtime are not relevant. There was no claim by Tuckerman that the employees who performed the inventory worked more than 40 hours that week.