**Mary L. SAMOSZUK, Relator,**

v.

**The COUNCIL OF COMMUNITY HOSPITALS, Commissioner of Jobs and Training, Respondents.**

**No. C9–87–876.**

Court of Appeals of Minnesota.

Sept. 29, 1987.

Gary Becker, Minneapolis, for Mary L. Samoszuk.

Perry Wilson, Minneapolis, for The Council of Community Hospitals.

Hubert H. Humphrey, III, Atty. Gen., Peter Andrews, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Considered and decided by NORTON, P.J., and MULALLY and LOMMEN, JJ.,* with oral argument waived.

### OPINION

EDWARD D. MULALLY, Judge.

Relator Mary Samoszuk appeals by writ of certiorari from a determination that she failed to establish good cause to quit her job with respondent Council of Community Hospitals. We affirm.

### FACTS

Respondent Council of Community Hospitals ("COCH") is an organization which provides technical and policy assistance to member hospitals. In March 1985, relator Mary Samoszuk was assigned the duties of vice-president of policy and vice-president of public affairs for COCH, and was told she could choose one position or the other. She chose to become vice-president of public affairs, and her beginning salary in that position was set at $27,000 per year.

In April 1986, COCH hired James Koppel as vice-president of policy, at a beginning

---

* Acting as judge of the Court of Appeals by ap-   pointment pursuant to Minn. Const. art. 6, § 2.

salary of $31,000 per year. Samoszuk became aware that Koppel was making more money than she was, and complained to COCH's president, Allan Johnson, about the difference in salaries.

In April 1986, Johnson requested the board of COCH to conduct a general study of the employees' wages. Consequently, an outside consultant, Hewitt Associates ("Hewitt"), was hired to review the positions in COCH's organization, to determine appropriate pay scales.

In May, 1986, COCH and Samoszuk entered into a settlement regarding Samoszuk's allegations that COCH had engaged in sex discrimination by paying Koppel a higher salary. The settlement provided for back pay, and raised Samoszuk's salary to $32,000 per year as of May 5, 1986. The settlement assured Samoszuk that her salary would not be reduced as a result of the Hewitt survey, and provided that the agreement constituted a final compromise of all claims.

In early June, Hewitt issued the results of its study. According to those results, the recommended salary range for James Koppel's position as vice-president of policy was $37,000–$56,000, while Samoszuk's position as vice-president of public affairs was designated a salary range of $30,000–$46,000.

On June 16, 1986, Samoszuk's attorney wrote a letter to the chairman of the board of COCH, alleging that Johnson had continued to engage in illegal conduct, had failed to abide by the terms of the settlement agreement, and had surreptitiously arranged to compensate Koppel at an annual salary in excess of that paid to Samoszuk. The letter called the Hewitt study a "sham," and indicated that, according to the settlement, Samoszuk and Koppel should have been placed at the same salary level. COCH responded in a letter to Samoszuk's attorney, warning that similar statements in the future could expose both Samoszuk and her attorney to liability for defamation.

On June 19, 1986, Samoszuk resigned from COCH and applied for unemployment compensation benefits, claiming that her resignation was for good cause. Her claim for benefits was initially denied, and she appealed to a department referee.

The referee conducted a hearing, and Samoszuk introduced substantial testimony regarding her claim that she had good cause to quit her employment with COCH. She explained that she regarded the letter from COCH as a threat of a lawsuit and an expression of lack of support by COCH. She also claimed that after the settlement agreement with COCH had been executed, Johnson had retaliated against her in several other ways. At the hearing Johnson denied Samoszuk's claims of retaliation, and explained the reasons for his actions.

The referee determined that Samoszuk had quit her employment without good cause, and, on appeal, a Commissioner's representative affirmed.

## ISSUE

Did Samoszuk meet her burden of proving that she had good cause to quit her employment with COCH?

## ANALYSIS

Samoszuk admits that she voluntarily quit her employment at COCH; therefore, the burden is upon her to demonstrate that she discontinued her employment for good cause attributable to COCH. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978).

The Commissioner's findings are to be reviewed in the light most favorable to the decision, and where there is evidence reasonably tending to sustain those findings, they should not be disturbed on appeal. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

Here there is ample evidence in the record to sustain the Commissioner's findings that none of Johnson's actions were retaliatory or done with a motive to discriminate against Samoszuk on the basis of sex. Samoszuk's arguments turn solely upon the credibility of the witnesses; each of her claims would require this court to adopt her testimony, rather than Johnson's. The Commissioner chose to believe John-

son's testimony over Samoszuk's, and it is not the function of this court to reweigh the evidence and determine where the preponderance lies. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.Ct.App. 1984); *Nyberg v. R.N. Cardozo & Bro., Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954).

## DECISION

The record supports the Commissioner's determination that Samoszuk terminated her employment without good cause attributable to her employer.

Affirmed.