**Joan A. WETTERHAHN, Relator,**

v.

**The KIMM COMPANY, Commissioner of Jobs and Training, Respondents.**

No. C9-88-1021.

Court of Appeals of Minnesota.

Sept. 27, 1988.

John S. Whitelaw, Legal Aid Soc. of Minneapolis, Inc., Minneapolis, for relator.

Kimm Co., Minneapolis, pro se.

Hubert H. Humphrey, III, Atty. Gen., James P. Barone, Sp. Asst. Atty. Gen., St. Paul, for Comr. of Jobs and Training.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and IRVINE *, JJ.

## OPINION

LANSING, Judge.

A Commissioner's representative from the Department of Jobs and Training determined that relator voluntarily quit her job without good cause attributable to the respondent employer. Relator seeks review of the Commissioner's decision, claiming she had good cause to quit as a result of harassment by a fellow employer. We reverse.

## FACTS

Joan Wetterhahn was employed by the Kimm Company as a packer. In November 1987, Wetterhahn resigned from her job, claiming that Kimm had failed to take ade-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. Wetterhahn testified that she did not file a grievance because she was warned by Varga not

quate measures to protect her from verbal harassment by a co-worker.

Wetterhahn applied for unemployment compensation benefits, and a hearing was conducted by a referee from the Department of Jobs and Training. At the hearing, Wetterhahn testified that her co-worker, Steve Varga, continuously swore and yelled at her. Another former employee corroborated Wetterhahn's claim, testifying that Varga exploded into temper tantrums all day long, usually directing his anger towards Wetterhahn.

Wetterhahn testified that she complained to a foreman, her union steward Ed Alex, and Robert Boddy, Kimm's production manager. She also raised the problem at company meetings. According to Wetterhahn, she was told that Boddy and the foreman would keep an eye on Varga, but no other action was taken to solve the problem.

Alex testified that Varga had caused trouble for 25 years. While Alex was aware of Wetterhahn's concerns, he explained that in the absence of a formal grievance [1], there was nothing he, as union steward, could do.

Robert Boddy, Kimm's production manager, admitted that he was aware of Varga's behavior, and met with him twice to discuss it. Boddy claimed he had no means of curtailing Varga's behavior; however he also testified that he could have stopped Varga's behavior by applying Kimm's graduated disciplinary procedure. Alex agreed that there were steps Kimm could have taken:

[T]hey could give [Varga] a verbal warning, a one-day suspension, two-day, three-day, and then termination. Those, that is what the company can do and has done to other employees.

Following the hearing, the referee concluded that Wetterhahn had failed to meet her burden of proving that she had good

to, and because there were no other available positions for which she was qualified. This testimony was confirmed by Alex.

cause, attributable to Kimm, to resign. On appeal, a Commissioner's representative affirmed, concluding that Kimm was not responsible for the situation and did not treat Wetterhahn unreasonably or arbitrarily.

## ISSUE

Did the Commissioner's representative err by determining that Varga's harassment did not constitute good cause for Wetterhahn to resign?

## ANALYSIS

An individual who voluntarily resigns from employment is disqualified from receiving unemployment compensation benefits unless he or she can prove that the resignation was with "good cause attributable to the employer." Minn.Stat. § 268.09, subd. 1(a) (Supp.1987); *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262 (Minn.1978).

In reviewing the Commissioner's factual findings, this court is limited to determining whether there is evidence reasonably tending to sustain the findings, viewing the evidence in the light most favorable to the decision. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). We take no issue with the Commissioner's factual findings.

Once the facts are determined, however, the question whether an employee had good cause to quit is one of law, which this court may independently review. *Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662, 664 (Minn.Ct.App.1985). We disagree with the Commissioner's conclusion that Kimm's actions in response to Wetterhahn's complaints were sufficient. We conclude as a matter of law that Wetterhahn had good cause to resign, because of Kimm's inadequate response to her complaints.

"Good cause attributable to the employer" does not require that the employer's actions be negligent or wrongful, *Hanson v. IDS Properties Management Co.*, 242 N.W.2d 833, 835 n. 1 (Minn.1976); *Neubert v. St. Mary's Hospital & Nursing Center*, 365 N.W.2d 780, 782 (Minn.Ct.App. 1985); the question is whether the employ-

ee has left employment "due to factors or circumstances directly connected" with the employment. *Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d 257, 261 (Minn. Ct.App.1984) (quoting *Hessler v. American Television & Radio Co.*, 258 Minn. 541, 557, 104 N.W.2d 876, 887 (1960)). In *Ferguson v. Department of Employment Services*, 247 N.W.2d 895 (Minn.1976), the supreme court cited the following test:

> [T]he circumstances which compel the decision to leave employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive
> * * *

*Id.* at 900 n. 5.

Harassment by a co-worker may constitute good cause to quit where the employer had notice of the harassment, but failed to take timely and appropriate measures to prevent it. *See, McNabb v. Cub Foods*, 352 N.W.2d 378 (Minn.1984); *Tru–Stone Corp. v. Gutzkow*, 400 N.W.2d 836 (Minn.Ct.App. 1987).

In *Tru–Stone*, we affirmed the Commissioner's determination that an employee had good cause to quit due to harassment which consisted of taunting, name calling, derogatory remarks, and uncomplimentary pictures with names and profanities written underneath. The Department claims *Tru–Stone* is distinguishable, because there the employee was singled out for harassment, whereas Varga subjected employees other than Wetterhahn to the same behavior. We do not believe this is a material distinction. The fact that an individual has harassed several employees should not disqualify one of those employees from receiving unemployment compensation benefits, if the employer's response to the situation was inadequate.

The Department argues that Kimm's response to Wetterhahn's complaints was adequate. There is definite and undisputed evidence, however, that Kimm had a gradu-

ated disciplinary procedure which the company failed to apply to Varga, despite the fact that Wetterhahn complained on several occasions. Boddy's own admission that this procedure existed contradicts Kimm's claim that in the absence of a formal grievance by Wetterhahn there was nothing Kimm could do.

There is no suggestion in the record that Wetterhahn was overly-sensitive to the situation; rather, the testimony indicated that other employees were offended by Varga's language and several had requested and obtained transfers. Because there were no available positions for which Wetterhahn qualified, she was ineligible for transfer.

Finally, we note that Varga was promoted to Wetterhahn's "leadman." While not actually a part of management, the position was supervisory in nature. In *Tru–Stone,* a section leader's harassment of an employee was imputed to the employer. There, the court relied on *McNabb,* which held that a manager's knowledge should be imputed to an employer where the manager "performs basically a 'first level supervisory and managerial function'." *Tru–Stone,* 352 N.W.2d at 383.

## DECISION

Kimm failed to take adequate measures to protect Wetterhahn from harassment by her co-worker; therefore, Wetterhahn had good cause to resign.

Reversed.

NIERENGARTEN, J., dissents.

NIERENGARTEN, Judge, dissenting.

I respectfully dissent. Although I may disagree with the decision of the referee and the Commissioner's representative, I would affirm because the "narrow standard of review" on appeal requires this court to defer to the Commissioner's factual findings. *See Reserve Mining Co. v. Gorecki,* 316 N.W.2d 547, 549 (Minn.1982); *see also, Nyberg v. R.N. Cardozo & Brother, Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954). The Commissioner's findings must be reviewed in a light most favorable to the decision and cannot be disturbed "if there is evidence reasonably tending to sus-

tain them." *Reserve Mining Co.,* 316 N.W.2d at 549. The record before this court contains evidence which reasonably supports the Commissioner's findings.

Viewed in a light most favorable to the decision, the record shows the employer did take steps to curb Varga's objectionable behavior by meeting with Varga on at least two occasions and discussing the problem with him. The extent and frequency of Wetterhahn's complaints and the employer's response to her complaints were established largely by testimony which was neither conclusive nor definitive. Under these circumstances, I would defer to the factfinder's unique opportunity to judge the credibility of witness testimony. *See Nyberg,* 243 Minn. at 365, 67 N.W.2d at 824; *Turnquist v. Amoco Oil Co.,* 397 N.W.2d 442, 444 (Minn.Ct.App.1986). In light of the record on appeal, I cannot conclude Wetterhahn met her burden of proving her resignation was for "good cause attributable to the employer." *See* Minn.Stat. § 268.09, subd. 1(a) (Supp.1987); *Marz v. Department of Employment Services,* 256 N.W.2d 287, 289 (Minn.1977); *see also Larson v. Department of Economic Security,* 281 N.W.2d 667, 669 (Minn.1979) (the employee had a duty to inform his employer of alleged harassment to allow the employer an opportunity to correct the situation; the employer could not be charged with having caused the employee's termination if the employer was not informed). I would affirm the Commissioner's decision.