*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0524**

Nikol Dowls,
Relator,

vs.

Select Comfort Retail Corporation,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed November 28, 2016
Affirmed
Cleary, Chief Judge**

Department of Employment and Economic Development
File No. 33932571-4

Kent M. Williams, Williams Law Firm, Long Lake, Minnesota (for relator)

David M. Wilk, Larson King, LLP, St. Paul, Minnesota; and

David Jordan-Huffman, Select Comfort Corporation, Minneapolis, Minnesota (for respondent Select Comfort Retail Corporation)

Lee B. Nelson, Tim Schepers, Anne Froelich, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Bratvold, Judge.

**CLEARY**, Chief Judge

In this certiorari appeal, relator Nikol Dowls challenges the determination of an unemployment law judge (ULJ) that she is ineligible for unemployment benefits because she quit without a good reason caused by the employer. We affirm.

**FACTS**

Relator began working for respondent-employer Select Comfort Retail Corporation on November 5, 2012. Relator was a member of the order management team and worked with other members of that team to resolve customer billing disputes.

In January 2015, another member of the order management team, called relator a "delusional little girl." The same coworker also told relator that her breathing was "gross" and that she should not work around other people.

A human resources representative completed an investigation into the coworker's comments in February 2015. The investigation concluded that the coworker had made both comments but also concluded that relator had engaged in unprofessional behavior towards the coworker that contributed to discord between the two employees. The coworker was given a "written corrective" and coached to treat the relator in a respectful and professional manner. Relator was also given a "corrective." While relator maintained that the coworker continued to harass her after this corrective action, Select Comfort was unable to substantiate her complaints.

In March 2015, relator was hospitalized for a psychological evaluation. From March 23, 2015 to June 23, 2015, she was out of the office on a medical leave of absence.

Upon relator's return from leave, her medical provider requested several accommodations. Select Comfort granted all but two of these accommodations. Select Comfort allowed relator to work a reduced schedule. At her request, relator's desk was moved away from the rest of the order management team, and she was given a cubicle with three walls. In addition, she was allowed to work half of her shifts in a different building. The company also offered relator a special mediator between relator and her supervisor who would be "a primary point of contact for [relator] on any work related questions."

Despite these accommodations, relator continued to complain about harassment from coworkers and micromanagement from her supervisor. On September 15, 2015, relator quit her job with Select Comfort.

Relator applied for unemployment benefits, and respondent Department of Employment and Economic Development (DEED) determined that she was eligible. Select Comfort appealed DEED's determination, and a hearing was held before a ULJ. At the hearing, relator, who is African-American, claimed that she was the victim of racial discrimination and harassment. She claimed that the coworker had not only called her a "delusional little girl" but had called her a "delusional little *black* girl." (Emphasis added.) She also claimed that she and another African-American woman were the only members of the order management team required to ask permission to use the bathroom.

3

In January 2016, the ULJ issued an order determining that relator was not eligible for unemployment benefits. Based on evidence that relator had never mentioned the coworker's use of the word "black" prior to the unemployment benefits proceedings, the ULJ found that the coworker had not referred to race in calling relator a "delusional little girl." The ULJ further found that relator's general allegations of harassment were not credible and that at the time of her resignation, it had been nearly eight months since anything that could be deemed "hostile" had occurred.

After relator requested reconsideration, the ULJ issued an order affirming the ineligibility determination. This certiorari appeal followed.

## D E C I S I O N

When reviewing a ULJ's eligibility decision, we may affirm, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015).

An employee who quits employment is ineligible for unemployment benefits unless a statutory exception applies. 2016 Minn. Laws ch. 189, art. 11, § 3, at 1042. One of these exceptions allows an employee to claim benefits if the employee "quit the employment because of a good reason caused by the employer." *Id.*

4

The ULJ determined that relator did not quit for a good reason caused by Select

Comfort.[1]  A good reason is defined as follows:

> A good reason caused by the employer for quitting is a reason:
>    (1)  that is directly related to the employment and for which the employer is responsible;
>    (2)  that is adverse to the worker; and
>    (3)  that would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment.

Minn. Stat. § 268.095, subd. 3(a) (2014).  The third element requires that the employee was compelled to quit by "extraneous and necessitous circumstances" and sets an objective standard of reasonableness.  *Werner v. Med. Prof'ls LLC*, 782 N.W.2d 840, 843 (Minn. App. 2010) (quotation omitted), *review denied* (Minn. Aug. 10, 2010).  The statute further provides that "[i]f an applicant was subjected to adverse working conditions by the employer, the applicant must complain to the employer and give the employer a reasonable opportunity to correct the adverse working conditions before that may be considered a good reason caused by the employer for quitting."  Minn. Stat. § 268.095, subd. 3(c) (2014).

"Whether an employee had good cause to quit is a question of law, which we review de novo."  *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012) (quotation omitted).  But the reason an employee quit is a question of fact.  *See Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing the reason for an employee's separation from employment as a fact question).  The conclusion that an employee did not

---

[1] The ULJ also determined that another statutory exception, medical necessity, did not apply.  Relator does not challenge that determination on appeal.

have a good reason to quit must be based on factual findings supported by substantial evidence. *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006). "We view the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006) (citations omitted).

Relator argues that she suffered over a year of harassment and that this harassment provided her with a good reason to quit. The ULJ found that relator quit because "she perceived that she was being harassed." After early 2015, the ULJ found that relator was not actually subject to any harassment. Accordingly, the last incident of harassment occurred nearly eight months before relator quit and was corrected by Select Comfort.

The coworker's January 2015 comments were investigated and the coworker was disciplined. While relator complained generally that she was subjected to further harassment from the coworker, she could not provide specific examples. Select Comfort conducted a follow-up meeting with the coworker in March 2015, and the coworker insisted that she was making a conscious effort to treat the relator respectfully. Select Comfort was unable to substantiate any hostile conduct by the coworker towards relator after the coworker received coaching in February 2015.

Following her medical leave, relator did make some specific complaints to her employer. Relator complained that her supervisor talked to employees about her medical leave. Select Comfort conducted an investigation and determined that the supervisor had simply responded to questions from employees about relator's absence by saying that

6

relator's "boyfriend's been calling in for her." Relator also complained that when she returned from medical leave, she was given work in a piecemeal fashion and that the type of assignments changed. A Select Comfort human resources representative testified that these changes were necessitated by relator's accommodations. Relator further complained that her supervisor required her to ask permission via electronic message every time she had to use the bathroom. The ULJ found that this accusation was false. Relator's supervisor testified at the hearing and denied requiring any employee to ask permission to use the bathroom. Moreover, Select Comfort reviewed emails and other electronic messages and found none that supported relator's claim. Relator also complained generally of "micromanagement" by her supervisor. This, however, appears to be a difference in opinion regarding appropriate management style rather than any sort of harassment. "Irreconcilable differences with an employer" and "mere dissatisfaction with working conditions" do not establish good cause to quit. *Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 382 (Minn. App. 1987). Finally, relator complained that another employee had accessed her desk without her permission. Relator was out of the office, and the employee entered her desk to retrieve a customer document that was needed immediately. The ULJ appropriately determined based on substantial evidence that these incidents either would not compel a reasonable person to leave the employment or did not occur.

Relator concedes that the ULJ rejected her claims of continued harassment as not credible and stated reasons for so finding. She argues, however, that the ULJ erred by rejecting the testimony of her other witnesses without giving specific reasons as to why

7

those witnesses were not credible. "When the credibility of a witness testifying in a hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony." Minn. Stat. § 268.105, subd. 1a(a) (2014).

Relator called two witnesses at the hearing. Neither of these witnesses personally saw or heard relator being subjected to any sort of harassment after January 2015. Their testimony merely offered ancillary support for relator's version of events. The ULJ explicitly rejected relator's testimony in favor of evidence provided by a Select Comfort human resources representative:

> Overall, [relator]'s testimony regarding her negative treatment at Select Comfort was not credible. . . . [Relator] testified that the conduct was ongoing but there was no evidence to support her claims. Select Comfort's contemporaneously prepared human capital and investigative notes, coupled with [the human resource's representative's] detailed, logical testimony, show that it is more credible, and therefore more probable, that [relator] had not been subjected to discrimination while employed at Select Comfort and that her encounters with [the coworker] had been corrected several months prior to [relator's] resignation.

Because relator's witnesses simply offered support for her version of events and the ULJ gave specific reasons for rejecting relator's testimony, the witnesses did not have a "significant effect" on the ULJ's decision and the statute does not require the ULJ to give specific reasons for rejecting their testimony. *See* Minn. Stat. § 268.105, subd. 1a(a). We defer to the ULJ's determination that relator's testimony was not credible. *See Skarhus*, 721 N.W.2d at 344.

"Harassment by a co-worker may constitute good cause to quit where the employer had notice of the harassment, but failed to take timely and appropriate measures to prevent it." *Wetterhahn v. Kimm Co.*, 430 N.W.2d 4, 6 (Minn. App. 1988); *see also* Minn. Stat. § 268.095, subd. 3(c). While relator was subjected to harassment in early 2015 and reported it to her employer, the hostile behavior was addressed by Select Comfort and was not repeated. The ULJ's determination that relator is ineligible for unemployment benefits is not erroneous because relator chose to leave her employment and did not quit for a good reason caused by Select Comfort.

**Affirmed.**